UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| ALLEN HAMMLER, | 1:19-cv-01650-AWI-GSA-PC |
|---|---|
| Plaintiff, | **FINDINGS AND RECOMMENDATIONS RECOMMENDING THAT DEFENDANT LUCAS'S RULE 12(b)(6) MOTION TO DISMISS THE COMPLAINT BE GRANTED IN PART AND DENIED IN PART** |
| vs. | |
| J. LYONS, et al., | |
| Defendants. | **(ECF No. 30.)** |
| | **FOURTEEN-DAY DEADLINE TO FILE OBJECTIONS** |

## I. BACKGROUND

Allen Hammler ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* with this civil rights action pursuant to 42 U.S.C. § 1983. On December 21, 2018, Plaintiff filed the Complaint commencing this action in the Sacramento Division of the United States District Court for the Eastern District of California. (ECF No. 1.) On April 3, 2019, Plaintiff filed the First Amended Complaint as a matter of course. (ECF No. 12.) On November 21, 2019, the Sacramento Division dismissed Plaintiff's claims against defendant Lyons for failure to state a claim and transferred all remaining claims to the Fresno Division. (ECF No. 15.)

1

On October 19, 2020, the court screened the First Amended Complaint and granted Plaintiff leave to either file a Second Amended Complaint or proceed only with the retaliation and violation of freedom of speech claims against defendant Lucas found cognizable by the court. (ECF No. 22.) On November 2, 2020, Plaintiff notified the court that he was willing to proceed with only the claims found cognizable by the court. (ECF No. 23.)

This case now proceeds with Plaintiff's First Amended Complaint filed on April 3, 2019, against defendant A. Lucas (Appeals Coordinator) for retaliation and violation of freedom of speech under the First Amendment. (ECF No. 12.)[1]

On February 9, 2021, defendant Lucas ("Defendant") filed a motion to dismiss this case under Rule 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that the First Amended Complaint fails to state sufficient facts establishing a First Amendment violation. (ECF No. 30.) On February 25, 2021, Plaintiff filed an opposition to the motion. (ECF No. 33.) Defendant's motion to dismiss is now before the court. Local Rule 230(*l*).

## II. LEGAL STANDARD FOR 12(b)(6) MOTION

Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss on the grounds that a complaint "fail[s] to state a claim upon which relief can be granted."

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint. Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). To survive a motion to dismiss for failure to state a claim, a plaintiff must allege "enough facts to state a claim for relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). The plausibility standard is not akin to a "probability requirement," but it requires more than a sheer possibility that a defendant has acted unlawfully. Iqbal, 556 U.S. at 678.

///

---

[1] On December 20, 2020, the court issued an order dismissing all other claims and defendants from this action, based on Plaintiff's failure to state a claim. (ECF No. 25.)

Dismissal under Rule 12(b)(6) may be based on either: (1) lack of a cognizable legal theory; or (2) insufficient facts under a cognizable legal theory. Chubb Custom Ins. Co. v. Space Sys./Loral, Inc., 710 F.3d 946, 956 (9th Cir. 2013). Dismissal also is appropriate if the complaint alleges a fact that necessarily defeats the claim. Franklin v. Murphy, 745 F.2d 1221, 1228-1229 (9th Cir. 1984).

*Pro se* pleadings are held to a less-stringent standard than those drafted by lawyers. Erickson v. Pardus, 551 U.S. 89, 93 (2007) (*per curiam*). However, the court need not accept as true unreasonable inferences or conclusory legal allegations cast in the form of factual allegations. See Ileto v. Glock Inc., 349 F.3d 1191, 1200 (9th Cir. 2003) (citing Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981)).

In ruling on a motion to dismiss filed pursuant to Rule 12(b)(6), the court "may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." Outdoor Media Group, Inc. v. City of Beaumont, 506 F.3d 895, 899 (9th Cir. 2007) (citation and quotation marks omitted). Although the court may not consider a memorandum in opposition to a defendant's motion to dismiss to determine the propriety of a Rule 12(b)(6) motion, see Schneider v. Cal. Dep't of Corrections, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998), it may consider allegations raised in opposition papers in deciding whether to grant leave to amend. See, e.g., Broam v. Bogan, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003).

In deciding a motion to dismiss, "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337–38 (9th Cir. 1996). The pleading standard under Rule 8 of the Federal Rules of Civil Procedure does not require "'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678 (2009) (quoting Twombly, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678.

To avoid a dismissal under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570.

### III. PLAINTIFF'S ALLEGATIONS AGAINST DEFENDANT LUCAS

Plaintiff is presently incarcerated at Corcoran State Prison in Corcoran, California. At the time of the events at issue in the First Amended Complaint, Plaintiff was incarcerated at Kern Valley State Prison in Delano, California, in the custody of the California Department of Corrections and Rehabilitation (CDCR).

Plaintiff alleges in the First Amended Complaint that on May 7, 2018, defendant Lucas, Appeals Coordinator, rejected Plaintiff's 602 prison appeal as pertaining to an issue already addressed in a prior 602, which Plaintiff alleges was not true. In responding back to the rejection notice, Plaintiff wrote, "If you screen [it] out again for [a] Bullshit reason, I will go to Fed. Judge and ask for [an] order to make you process this 602." (ECF No. 12 at 4:14-16.) The appeal was rejected again based on the language used by Plaintiff. Plaintiff claims he had a First Amendment right to express himself in that way, but Plaintiff scratched out the offending language and resubmitted the 602. On July 25, 2018, Plaintiff submitted a new and separate 602 appeal about defendant Lucas for violating Plaintiff's free speech rights when he rejected the prior appeal.

Plaintiff claims that defendant Lucas rejected the prior appeal because Plaintiff was being critical of Lucas's actions. The appeal was rejected again by defendant Gonzales [not a defendant] for missing a document that Plaintiff claims was attached to the appeal. Plaintiff claims that defendant Gonzales [not a defendant] rejected the 602 appeal to keep Plaintiff from exercising his right to free speech. Plaintiff alleges that defendant Lucas retaliated against him in violation of his right to free speech and that by using the word "bullshit," he only meant that defendant Lucas's reasons were insincere, exaggerated or nonsense, as reflected in Webster's New College Dictionary's definition of "bullshit." Plaintiff asserts that he was not attempting to convey vulgar or threatening sentiments and therefore there was no legitimate penological reason for Defendant's actions. Plaintiff alleges that his appeals should not have been rejected and that Defendant acted with ill will and was following unwritten doctrine and practice of the "Code of Silence," which mandates one staff member to do what he can to shield and protect another from complaint that would have an adverse effect upon employment. (ECF No. 12 at 10-11.)

As relief, Plaintiff seeks monetary damages and costs of suit.

**IV.     REQUEST FOR JUDICIAL NOTICE**

Defendant requests the court to take judicial notice of the 2018 version of 15 CCR § 3084.6, which is part of CDCR's DOM (Department Operations Manual).  Defendant has submitted a copy of the 2018 version of 15 CCR § 3084.6, titled "Rejection, Cancellation, and Withdrawal Criteria," attached to the motion to dismiss as Exhibit 1.

"Courts may only take judicial notice of adjudicative facts that are not subject to reasonable dispute." United States v. Ritchie, 342 F.3d 903, 908-09 (9th Cir. 2003) (citing Fed. R. Evid. 201(b)).  "Facts are indisputable, and thus subject to judicial notice, only if they either 'generally known'. . . or capable of accurate and ready determination by resort to sources whose accuracy cannot be questioned[.]" Id. at 909.  The Court may take judicial notice of matters of public record, including records and reports of administrative agencies. United States v. 14.02 Acres of Land More or Less in Fresno County, 547 F.3d 943, 955 (9th Cir. 2008) (quotations marks and citations omitted).  Shabazz v. Giurbino, No. 111CV01558DADSABPC, 2017 WL 2671082, at *3 (E.D. Cal. June 21, 2017).  On a motion to dismiss, the court may take judicial notice of matters of public record, but cannot take judicial notice of disputed facts contained in such public records.  Fed. R. Evid. 201(b)(2).  Baird v. BlackRock Institutional Tr. Co., N.A., 403 F. Supp. 3d 765 (N.D. Cal. 2019).

CDCR's DOM is a proper subject for judicial notice. See Brown v. Valoff, 422 F.3d 926, 931 n.7 (9th Cir. 2005) (citing City of Sausalito v. O'Neill, 386 F.3d 1186, 1124 n.2 (9th Cir. 2004) ("We may take judicial notice of a record of a state agency not subject to reasonable dispute.")).  Therefore, the court shall take judicial notice of the 2018 version of § 3084.6 used in CDCR's DOM.  Accordingly, Defendant's request for judicial notice is granted.

**V.      DEFENDANT'S MOTION TO DISMISS**

    **A.     Retaliation Claim**

        **1.     Legal Standard**

"Prisoners have a First Amendment right to file grievances [and lawsuits] against prison officials and to be free from retaliation for doing so." Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012) (citing Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009)).  "Within the

prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005). To state a cognizable retaliation claim, Plaintiff must establish a nexus between the retaliatory act and the protected activity. Grenning v. Klemme, 34 F.Supp.3d 1144, 1153 (E.D. Wash. 2014).

### 2. Parties' Arguments

Defendant argues that Plaintiff's retaliation claim should be dismissed because rejecting a grievance is not an adverse action, that Plaintiff's own exhibits fail to show that Defendant threatened any punitive action "over and above merely refusing to accept the grievance." (First Amended Complaint, ECF No. 12 at 22.)

In opposition, Plaintiff argues that the screening-out of his grievance is not a trivial issue because it was a violation of the First Amendment and Plaintiff was reproached for expressing his thoughts about Defendant's character as "bullshit." Plaintiff contends that the screening-out of his grievance did not further a legitimate penological goal because Plaintiff's words were not the kind of fighting words to which § 3084.6 is meant to apply. He also argues that a reasonable prisoner's resolve to file future 602's would surely be chilled by Defendant's actions, but that he personally did not need to be completely chilled from exercise of his First Amendment rights.

### 3. Analysis

#### a. *Adverse Action*

As to the first element of a retaliation claim, "the mere threat of harm can be an adverse action, regardless of whether it is carried out[.]" Williams v. Fox, 2017 U.S. Dist. LEXIS 34386, at * 18, 2017 WL 916432 (D. Idaho Jan. 11, 2017) (citing Brodheim, 584 F.3d at 1270 (internal quotation marks and citations omitted). An adverse action may be a harm or a threat of harm, and may be explicit or implied. Brodheim, 584 F.3d at 1270. Though an adverse action need not be an independent constitutional violation, inconsequential or *de minimis* harms do not constitute adverse actions. Watison, 668 F.3d at 1108 (to support a claim a harm must be "more

6

than minimal") (citations omitted*);* see also Bell v. Johnson, 308 F.3d 594, 603 (6th Cir. 2002) ("[S]ome adverse actions are so *de minimis* that they do not give rise to constitutionally cognizable injuries." (citing Thaddeus-X v. Blatter, 175 F.3d 378, 396 (6th Cir. 1999))).

"[T]he denial of a grievance or appeal 'neither constitutes an adverse action that is more than *de minimis* nor is it sufficient to deter a prisoner of 'ordinary firmness' from further First Amendment activities." Chacon v. Diaz, No. EDCV201898JWHKS, 2020 WL 7214292, at *5 (C.D. Cal. Sept. 28, 2020) (quoting Dicey v. Hanks, No. 2:14-CV-2018 JAM AC, 2015 WL 4879627, at *5 (E.D. Cal. Aug. 14, 2015) (collecting cases and denying leave to amend because "denial of a grievance does not constitute an adverse action," report and recommendation adopted, No. 214CV2018JAMACP, 2015 WL 6163444 (E.D. Cal. Oct. 15, 2015); see also Allen v. Kernan, No. 316CV01923CABJMA, 2018 WL 2018096, at *7 (S.D. Cal. Apr. 30, 2018) (same), aff'd, 771 F. Appx 407 (9th Cir. 2019); Almy v. R. Bannister, No. 313CV00645MMDVPC, 2016 WL 11448946, at *6 (D. Nev. May 23, 2016) ("courts have generally concluded that the denial of a grievance or a disciplinary appeal without more does not meet the requisite threshold of adversity"), report and recommendation adopted sub nom. Almy v. Bannister, No. 313CV00645MMDVPC, 2016 WL 5419416 (D. Nev. Sept. 27, 2016)).

Therefore, the court finds that Defendant Lucas's rejection of Plaintiff's grievance because it contained disagreeable language does not constitute an adverse action that is more than *de minimis* for retaliation purposes, and Plaintiff fails to state a retaliation claim.

### b.  *Chilling Inquiry*

Regarding the fourth element of a retaliation claim, the chilling-of-speech inquiry is evaluated using an objective standard. "[A] plaintiff does not have to show that 'his speech was actually inhibited or suppressed,' but rather that the adverse action at issue 'would chill or silence a person of ordinary firmness from future First Amendment activities.'" Williams, 2017 U.S. Dist. LEXIS 34386, at * 20 (citing Brodheim, 584 F.3d at 1271 (quoting Rhodes, 408 F.3d at 568-69)). A claim of retaliation is not successful merely because the inmate was punished for using disrespectful language in a grievance; there must also be a showing of an actual retaliatory motive. Id. The court finds that the screening out of Plaintiff's grievance for using abusive

language is not sufficient to deter a prisoner of "ordinary firmness" from further First Amendment activities. Therefore, the court finds that Plaintiff has not satisfied the elements of a retaliation claim, and Plaintiff's retaliation claim should be dismissed.

### 4. Leave to Amend

Defendant argues that Plaintiff should not be granted leave to amend his retaliation claim because he is unable to meet necessary elements for a First Amendment retaliation claim, making amendment futile.

Rule 15(a) of the Federal Rules of Civil Procedure governs amendment of the complaint. "Rule 15(a) is very liberal and leave to amend 'shall be freely given when justice so requires.'" AmerisourceBergen Corp. v. Dialysis West, Inc., 445 F.3d 1132, 1136 (9th Cir. 2006) (quoting Fed. R. Civ. P. 15(a)). However, courts "need not grant leave to amend where the amendment: (1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in the litigation; or (4) is futile." Id. The factor of "'[u]ndue delay by itself . . . is insufficient to justify denying a motion to amend.'" Owens v. Kaiser Foundation Health Plan, Inc., 244 F.3d 708, 712, 713 (9th Cir. 2001) (quoting Bowles v. Reade, 198 F.3d 752, 757-58 (9th Cir. 1999)).

In this case, Plaintiff has amended the complaint once and decided to proceed with the First Amended Complaint after guidance by the court. "A district court may deny leave to amend when amendment would be futile." Hartmann v. CDCR, 707 F.3d 1114, 1130 (9th Cir. 2013). Defendant argues that it would be futile to grant Plaintiff leave to amend the complaint. Defendant asserts that Plaintiff has already stated all of the facts and included numerous exhibits in his forty-eight-page complaint to support his contentions. Defendant maintains that the Court has already generously granted Plaintiff an opportunity to amend his previous complaint, with instructions to "demonstrate how the conditions complained of have resulted in a deprivation of [his] constitutional rights," and to "allege in specific terms how each named defendant is involved." Defendant contends that the deficiency in Plaintiff's pleading does not lie in the lack of details but rather in the lack of legal support for his claim. Because it does not appear that Plaintiff could cure the deficiency, Defendant argues that the Court should deny leave to amend.

Defendant's argument has merit. As the court has discussed, under current law, Defendant's rejection of Plaintiff's grievance, without more, does not rise to the level of an adverse action against Plaintiff for purposes of a retaliation claim, nor would rejection of a grievance for abusive language written in the grievance deter a prisoner of "ordinary firmness" from further First Amendment activities. Thus, under Plaintiff's facts – that his grievance was rejected for his use of disagreeable language written in the grievance – Plaintiff cannot state a claim for retaliation under current law by re-alleging his allegations or adding more detail to the facts, because under current law he is unable to state a retaliation claim. Plaintiff has already amended the complaint, chose to proceed with the First Amended Complaint with guidance by the court and failed to state a retaliation claim. The court is persuaded that Plaintiff is unable to allege any facts, based upon the circumstances he challenges, that would state a cognizable retaliation claim. "A district court may deny leave to amend when amendment would be futile." Hartmann v. CDCR, 707 F.3d 1114, 1130 (9th Cir. 2013). The court finds that the deficiencies in Plaintiff's retaliation claim outlined above are not capable of being cured by amendment, and therefore further leave to amend should not be granted. 28 U.S.C. § 1915(e)(2)(B)(ii); Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000).

### C. Freedom of Speech

#### 1. Legal Standard

The standards governing First Amendment claims of incarcerated persons were outlined by the United States Supreme Court in Turner v. Safley, 482 U.S. 78, 107 S. Ct. 2254, 96 L. Ed. 2d 64 (1987). A prisoner's First Amendment rights are necessarily "more limited in scope than the constitutional rights held by individuals in society at large." Shaw v. Murphy, 532 U.S. 223, 229 (2001). Thus, an inmate retains only "those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." Pell v. Procunier, 417 U.S. 817, 822 (1974); Bell v. Wolfish, 441 U.S. 520, 545 (1979); Prison Legal News v. Cook, 238 F.3d 1145, 1149 (9th Cir. 2001).

It is "well established" that among the constitutional rights that incarcerated individuals retain is the right to petition the government for redress of grievances. Brodheim, 584 F.3d at

1273 (citing Rhodes, 408 F.3d at 566; Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003)); see also Bradley v. Hall, 64 F.3d 1276, 1279 (9th Cir. 1995) (holding that the right to petition applies to incarcerated individuals and includes the right to use a prison grievance process, if such a process exists, overruled on other grounds by Shaw, 532 U.S. at 230 n.2.)) The Ninth Circuit has further recognized a qualified right of prisoners to use disrespectful language in prison grievances. See id. at 1281-82; Richey v. Dahne, 733 Fed. Appx 881, 883-84 (9th Cir. 2018) (unpublished). Richey v. Young, 2021 U.S. Dist. LEXIS 52425, *10-11.

Verbal expressions of free speech in prison are treated differently from written expressions. In both Bradley and Brodheim, the Ninth Circuit drew an important distinction between (1) the act of writing disrespectful words in a grievance directed to prison officials, and (2) the legitimate interest a prison has in "prevent[ing] any open expression of disrespect or any disrespectful communication between prisoner and guard or between prisoner and prisoner." Brodheim, 584 F.3d at 1273 (emphasis added) (citing Bradley, 64 F.3d at 1281). Williams, 7 U.S. Dist. LEXIS 34386, *11-12, 2017 WL 916432. Disrespectful language in an inmate's grievance is protected activity under the First Amendment's "right to meaningful access to the courts" and the "broader right to petition the government for a redress of his grievances." Bradley, 64 F.3d at 1281-82.

In Bradley, the Ninth Circuit Court of Appeals held that accessing the courts was such an important right that prison officials should not be permitted to punish prisoners for using "hostile, sexual, abusive, or threatening" language in a written grievance. Id. at 1279, 1282; Williams, 2017 U.S. Dist. LEXIS 34386, at *14. Regulations that punish an inmate for using "hostile, sexual, abusive or threatening" language in a written grievance, for example, are not reasonably related to penological interests and therefore violate the First Amendment. See Bradley, 64 F.3d at 1279-82. The Ninth Circuit held squarely that no legitimate penological interest is served by prison rules prohibiting disrespectful language in grievances, reasoning that grievances were easy to insulate from other prisoners and from those prison officials who are the target of the grievance, so that disrespectful language in a grievance did not raise any substantial security concern. Brodheim, 584 F.3d at 1273. "A prisoner's statement in a grievance need not have any

10

more impact on prison security through the maintenance of respect than the prisoner's unexpressed thoughts." Id. (quoting Bradley, 64 F.3d at 1281). The holding of Brodheim relates only to the narrow category of cases dealing with prison grievances. Id.

        **2.     Parties' Arguments**

Defendant argues that despite the Ninth Circuit decision that rules prohibiting disrespectful language do not serve a legitimate penological interest, a prison official's request for a prisoner to rewrite his grievance is not a violation of the First Amendment. Defendant contends that a First Amendment violation occurs only when prison officials refuse to allow the grievance to proceed after a plaintiff did not rewrite in a way that satisfied the official's sense of propriety. Defendant also argues that if an inmate uses disrespectful language that does not qualify as a grievance, or if he writes a grievance composed of nothing more than strings of insults, or if he uses a grievance solely to harass the prison official, then the government would have legitimate penological concerns related to the security of guards and the desirability of maintaining harmonious relationships between guards and prisoners to the extent possible. Defendant asserts that in this case, Plaintiff did not express disrespectful language in a grievance, but rather stated that Defendant's rejection of Plaintiff's grievance was "bullshit."

In opposition, Plaintiff argues that people with opinions of our actions being "Bullshit," "Hog-Wash," or "Poppy-Cock" should not be silenced because we will become a nation without moral reflection to call us on our bullshit. Plaintiff contends that the First Amendment "needs room to breathe, and Defendant's motion is a hand around the throat." (ECF No. 33 at 4 ¶ 9.)

        **3.     Analysis**

In this case, Plaintiff challenges an action by defendant Lucas, regarding Plaintiff's use of language in the course of the prison grievance process on May 7, 2018.

Plaintiff alleges in the First Amended Complaint that on April 30, 2018 he submitted a 602 grievance, which was assigned Log No. KVSP-0-18-1113. (ECF No. 12 at 3-4 ¶¶ 3, 4.) On May 7, 2018, defendant Lucas, Appeals Coordinator, rejected Plaintiff's 602 prison appeal as pertaining to an issue already addressed in a prior 602, which Plaintiff alleges was not true. (Id. ¶ 4.) In responding back to the rejection notice on June 3, 2018, Plaintiff wrote, "If you screen

[it] out again for [a] Bullshit reason, I will go to Fed. Judge and ask for [an] order to make you process this 602." (Id. at ¶¶ 4, 5.) On June 22, 2018, defendant Lucas rejected the appeal again under 15 CCR § 3084.6(b)(4) based on the language used by Plaintiff. (Id. at ¶ 5.)

Plaintiff claims he had a First Amendment right to express himself in that way, but nevertheless Plaintiff scratched out the offending language and resubmitted the 602 on July 24, 2018. (Id. at ¶¶ 5, 6.) Plaintiff argues that he did not violate 15 CCR § 3084.6(b)(4), which provides that "an appeal may be rejected if it contains threatening, obscene, demeaning, or abusive language" because his speech was clearly not meant to threaten violence, nor was his speech obscene, demeaning, or abusive in any way. (Id. at ¶¶ 15,16.) Plaintiff argues that Defendant's acts did not further any legitimate penological goal as the speech at issue was not of the kind of fighting words to which § 3084.6 is meant to apply.

Merely returning a grievance to an inmate or asking the inmate to rewrite it in a more appropriate manner is not a violation of the right to petition for redress, Richy, 733 F.Appx at 883, but an official action that stops the grievance process—such as an outright refusal to accept a grievance—does. Williams, 2020 U.S. Dist. LEXIS 39718, at *13. In this case, an outright refusal of Plaintiff's grievance by defendant Lucas did occur.

Based on the Ninth Circuit's decisions that disrespectful language in a prisoner's grievance is itself protected activity under the First Amendment, actions that punish an inmate for using such language in a grievance is actionable under the First Amendment. Thus, Defendant's motion to dismiss Plaintiff's First Amendment claim for violation of freedom of speech should be denied and Plaintiff allowed to proceed with his freedom of speech claim against Defendant Lucas.

### D. Qualified Immunity

Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." Saucier v. Katz, 533 U.S. 194, 200, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001) (internal quotes omitted), abrogated in part on other grounds by Pearson v. Callahan, 555 U.S. 223, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009). Qualified immunity protects § 1983 defendants from liability for civil damages so long as their conduct does not violate clearly established

constitutional or statutory rights of which a reasonable person would have known. Id. at 231 (citing Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)). Qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments," and "protects 'all but the plainly incompetent or those who knowingly violate the law.'" Ashcroft v. al-Kidd, 563 U.S. 731, 743 (2011) (quoting Malley v. Briggs, 475 U.S. 335, 341, 106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986)). Qualified immunity questions are to be resolved at the "earliest possible stage in litigation" because qualified immunity is "an immunity from suit rather than a mere defense to liability." Steele, 2020 WL 4480386, at *10 (quoting Pearson, 555 U.S. at 231–2; Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). The doctrine of qualified immunity protects government officials in their individual capacities from liability for civil damages. See Pearson, 555 U.S. at 223. Here, Plaintiff proceeds against defendant Lucas in his/her individual capacity for monetary damages.

In Saucier, 533 U.S. at 201, the Supreme Court set forth a two-prong test to be applied in evaluating claims of qualified immunity: (1) whether the facts alleged, when taken in the light most favorable to the party asserting the injury, show that the defendant's conduct violated a constitutional right; and (2) whether the right was clearly established. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his/her conduct was unlawful in the situation he confronted." Id. at 202. The district court may analyze either prong of qualified immunity first. Id. at 236. Richey, 2021 U.S. Dist. LEXIS 52425, at *12.

      **1.**    **First Amendment Freedom of Speech Claim**

Defendant maintains that he/she is entitled to qualified immunity from Plaintiff's First Amendment freedom of speech claim.

      **a.**    *Parties' Arguments*

Defendant argues that Plaintiff failed to show that Defendant violated any constitutional right to freedom of speech. Defendant contends that even if the court finds a constitutional violation, he/she is still entitled to immunity because a reasonable official, faced with analogous case factors, would not know that the actions attributed to Defendant in the First Amended

Complaint violated a clearly established right. Here, Defendant found in the First Amended Complaint that Plaintiff's grievance was apparently rejected in the screening process with instructions for Plaintiff to correct the deficiency in his grievance, thus neither refusing to process Plaintiff's grievance, nor administratively withdrawing the grievance. Defendants note that under 15 CCR § 3084.6(a)(2) (2018), a rejection is merely a request that the prisoner cures the deficiency noted. Given the existing body of law, Defendant argues that no reasonable officer would have thought rejecting Plaintiff's grievance would be a violation of Plaintiff's First Amendment rights. Therefore Defendant concludes that he/she is entitled to qualified immunity on Plaintiff's Free Speech claim.

Plaintiff however argues that the issue of his 602 being screened out is a "large and looming" violation of the First Amendment. Because Defendant is employed in a department that handles CDCR complaints, Plaintiff contends that Defendant knew it was not constitutionally appropriate to threaten to reject future filings in response to a prisoner's notice that civil action would be taken for intentional "Bullshit" handling of his 602 grievance.

### b. *Analysis*

Here, the court has found that Plaintiff states a claim for violation of his First Amendment Freedom of speech. The Ninth Circuit may well be an outlier in holding that disrespectful language in grievances constitutes protected speech and that a prisoner may not be punished for it. However, the law in the Ninth Circuit was well established before 2015. Richey, 2021 U.S. Dist. LEXIS 52425, at *11. In 2009, the Ninth Circuit in Bradley stated broadly that "prison officials may not punish an inmate merely for using 'hostile, sexual, abusive or threatening' language in a written grievance." Bradley. 64 F.3d at 1282. Similarly, in Brodheim, the court held that a defendant's warning to an inmate about what the inmate writes in a grievance "cannot escape constitutional scrutiny by citing a legitimate penological interest." Brodheim, 584 F.3d at 1273. The Ninth Circuit further held that "prohibiting disrespectful language" does not constitute a legitimate penological goal and that at the time of the Brodheim opinion in 2009, this proposition already was established precedent in this Circuit. Id. at 1272.

///

Defendant notes that under 15 CCR § 3084.6(a)(2) (2018), a rejection is merely a request that the prisoner cure the deficiency noted, and that the 2018 version of 15 CCR § 3084.6(b)(4), titled "Rejection, Cancellation, and Withdrawal Criteria," provides in relevant part: "An appeal may be rejected [if t]he appeal contains threatening, obscene, demeaning, or abusive language." 15 CCR § 3084.6. However, the court finds that § 3084.6(b)(4) does not reflect the current law of the Ninth Circuit and is not applicable here.

Based on the foregoing, the court finds that defendant Lucas's conduct violated clearly established constitutional rights of which a reasonable person would have known. Defendant Lucas should have known that rejecting Plaintiff's grievance based on disrespectful language contained within his grievance materials was a constitutional violation, and thus Lucas is not entitled to qualified immunity on Plaintiff's freedom of speech claim.

## VI. DAMAGES

Plaintiff requests as relief $200,000 as to each separate claim, punitive damages of $200,000 on each claim, exemplary damages of $200,000, and costs of suit. (ECF No. 12 at 16.)

The court has observed that on July 5, 2018, Plaintiff stated in his 602 appeal no. KVSP-O-18-02255 that he "wishes Lucas to know that he thanks him/her for the money he'll be paid for his/her (Lucas's) becoming comfortable violating prisoner's rights." (ECF No. 12 at 20.) Solely in regard to the case at bar, based on this statement expressing Plaintiff's point of view, the court feels obligated to set forth the law of damages as they may affect this individual case, without making any ruling.

With respect to compensatory damages, in the case at bar, Plaintiff has not articulated any claim of physical injury or any other harm he suffered for which he could be compensated. Compensatory damages are meant to reasonably and fairly compensate a plaintiff for an actual injury that was caused by the defendant. See, e.g., Carey v. Piphus, 435 U.S. 247, 264-65, 98 S. Ct. 1042, 55 L. Ed. 2d 252 (1978). While a prison official's alleged failure to process an inmate grievance may implicate a prisoner's First Amendment right of access to the courts, a plaintiff may not prevail on such a claim unless he can show that he suffered an "actual injury" as a result of a defendant's actions. Lewis v. Casey, 518 U.S. 343, 351-53, 354-55, 116 S. Ct. 2174, 135 L.

Ed. 2d 606 (1996) (a plaintiff pursuing any denial of access claim must show that he suffered an "actual injury" as a result of the defendants' actions). Here, given the current state of Plaintiff's allegations, he has not alleged or shown any facts to support an award of compensatory damages, and it appears from the record that Plaintiff did not suffer any injury. Even though Plaintiff's grievance was rejected, it appears that his second submission was successful. Moreover, as Plaintiff's First Amended Complaint currently stands it does not appear to allege any injury that resulted from Defendant's violation of his rights to free speech.

Further, Plaintiff specifically requests punitive damages in the First Amended Complaint. Punitive damages serve to punish a defendant for wrongful conduct and to deter the defendant and others from repeating that wrong. Dang v. Cross, 422 F.3d 800, 810 (9th Cir. 2005). Punitive damages are available in cases brought under § 1983 only when a plaintiff demonstrates that a defendant's conduct was driven by evil motive or intent, or when it involved reckless or callous indifference to the constitutional rights of others. Id. at 807. Oppressive conduct is also a proper predicate for an award of punitive damages under § 1983. Id. at 808.

"Conduct is malicious if it is accompanied by ill will, or spite, or if it is for the purpose of injuring another. Conduct is in reckless disregard of the plaintiff's rights if, under the circumstances, it reflects complete indifference to the plaintiff's safety, rights, or the defendant acts in the face of a perceived risk that its actions will violate the plaintiff's rights under federal law." Id. at 807 (quoting 9th Cir. Model Civ. Jury Instr. 7.5 (2004)). Conduct is oppressive "if done in a manner which injures or damages or otherwise violates the rights of another person with unnecessary harshness or severity as by misuse or abuse of authority or power or by taking advantage of some weakness or disability or the misfortunes of another person." Id. at 809.

There appears to be little support in the record demonstrating that defendant Lucas, in rejecting Plaintiff's grievance because of disagreeable language in May 2018, was driven by evil motive or intent, or that his/her conduct was oppressive or involved reckless or callous indifference to Plaintiff's constitutional rights. To this point, it appears that Plaintiff has not demonstrated any entitlement to punitive damages arising out of the conduct of defendant Lucas.
///

Damages "based on the abstract 'value' or 'importance' of constitutional rights" are not permissible in a section 1983 case. Memphis Cmty. Sch. Dist. v. Stachura, 477 U.S. 299, 310, 106 S. Ct. 2537, 91 L. Ed. 2d 249 (1986). By contrast, a plaintiff who has met his burden of showing a violation of a constitutional right may receive nominal damages without proof of any injury. Id. at 308, n. 11. Thus, it appears so far that Plaintiff is, at most, entitled to an award of nominal damages if it is proven that he suffered a violation of his First Amendment rights. Richey v. Stemler, 2020 U.S. Dist. LEXIS 249217, *30-32, 2020 WL 8370941 (W.D. Wash. April 16, 2020).

## VII. RECOMMENDATIONS AND CONCLUSION

Based on the foregoing, IT IS HEREBY RECOMMENDED that:

1. Defendant Lucas's motion to dismiss, filed on February 9, 2021, be granted in part and denied in part;
2. Defendant Lucas's motion to dismiss Plaintiff's retaliation claim against defendant Lucas be granted, without leave to amend;
3. Defendant Lucas's motion to dismiss Plaintiff's claim for violation of freedom of speech be denied;
4. Defendant Lucas's request for qualified immunity be denied;
5. This case proceed only with Plaintiff's claim against defendant Lucas for violation of Plaintiff's rights to freedom of speech under the First Amendment;
6. Defendant Lucas be ordered to file an answer within thirty days; and
7. This action be referred back to the Magistrate Judge for further proceedings.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). **Within fourteen (14) days** from the date of service of these Findings and Recommendations, any party may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed **within ten (10) days** after service of the objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson

v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

    Dated:   **July 6, 2021**           **/s/ Gary S. Austin**
                                                     UNITED STATES MAGISTRATE JUDGE