# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALLEN HAMMLER, | **1:19-cv-01650-AWI-GSA-PC** |
| Plaintiff, | **FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT DEFENDANT LUCAS'S MOTION FOR SUMMARY JUDGMENT BASED ON FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES BE GRANTED** |
| vs. | |
| LYONS, et al., | |
| Defendants. | **(ECF No. 61.)** |
| | **OBJECTIONS, IF ANY, DUE WITHIN FOURTEEN DAYS** |

## I.    BACKGROUND

Allen Hammler ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* with this civil rights action pursuant to 42 U.S.C. § 1983. This case now proceeds with Plaintiff's First Amended Complaint filed on April 3, 2019, against defendant A. Lucas (Appeals Coordinator) ("Defendant") for violation of freedom of speech under the First Amendment.[1] (ECF No. 12.)

---

[1] On July 27, 2021, the court dismissed all other claims from this case based on Plaintiff's failure to state a claim. (ECF No. 36.)

On March 14, 2022, Defendant Lucas filed a Motion for Summary Judgment based on Plaintiff's failure to exhaust administrative remedies.  (ECF No. 61.)  On April 20, 2022, Plaintiff filed an opposition (ECF Nos. 63, 67), and on May 23, 2022, Defendant filed a reply (ECF No. 66).

Defendant's motion for summary judgment was submitted upon the record on May 23, 2022, without oral argument pursuant to Local Rule 230(*l*), and for the reasons that follow, the court finds that Defendants' motion for summary judgment should be granted.

## II.    SUMMARY OF ALLEGATIONS AGAINST DEFENDANT A. LUCAS IN THE FIRST AMENDED COMPLAINT

At the time of the events at issue in the First Amended Complaint, Plaintiff was incarcerated at Kern Valley State Prison in Delano, California, in the custody of the California Department of Corrections and Rehabilitation.  Only one defendant now remains in this case, A. Lucas (Appeals Coordinator) ("Defendant").

Plaintiff alleges in the First Amended Complaint that on May 7, 2018, defendant Lucas rejected one of Plaintiff's 602 prison appeals, Log # KVSP-0-18-1113, which related to an incident not germane to this case.  Later on June 3, 2018, Plaintiff resubmitted this rejected appeal but wrote upon it,  "If you screen [it] out again for [a] Bullsh** reason, I will go to Fed. Judge and ask for [an] order to make you process this 602."  (ECF No. 12 at 4:14-16.).  Thereafter, on June 22, 2018, defendant Lucas rejected the June 3rd appeal based on the language quoted above. Finally on June 25, 2018, Plaintiff filed a new 602 appeal claiming that defendant Lucas violated Plaintiff's First Amendment rights by rejecting the June 3 appeal based on the language used by Plaintiff, who claims he had a First Amendment right to express himself in that way.

As relief, Plaintiff seeks monetary damages and costs of suit.

## III.    SUMMARY JUDGMENT BASED ON EXHAUSTION – LEGAL STANDARDS

### A.    <u>Statutory Exhaustion Requirement</u>

Section 1997e(a) of the Prison Litigation Reform Act of 1995 (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such

administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Prisoners are required to exhaust the available administrative remedies prior to filing suit. Jones v. Bock, 549 U.S. 199, 211, 127 S.Ct. 910, 918-19 (2007); McKinney v. Carey, 311 F.3d 1198, 1199-1201 (9th Cir. 2002). Exhaustion is required regardless of the relief sought by the prisoner and regardless of the relief offered by the process, Booth v. Churner, 532 U.S. 731, 741, 121 S.Ct. 1819 (2001), and the exhaustion requirement applies to all prisoner suits relating to prison life, Porter v. Nussle, 534 U.S. 516, 532, 122 S.Ct. 983, 993 (2002).

"[T]o properly exhaust administrative remedies prisoners 'must complete the administrative review process in accordance with the applicable procedural rules,' [ ]—rules that are defined not by the PLRA, but by the prison grievance process itself." Bock, 549 U.S. at 218 (quoting Woodford v. Ngo, 548 U.S. 81, 88, 126 S.Ct. 2378, 2386, 165 L.Ed.2d 368 (2006)). See also Marella v. Terhune, 568 F.3d 1024, 1027 (9th Cir. 2009) ("The California prison system's requirements 'define the boundaries of proper exhaustion.'"). An untimely or otherwise procedurally defective appeal will not satisfy the exhaustion requirement. Woodford, 548 U.S. at 90. However, the Ninth Circuit has made clear: A grievance need not include legal terminology or legal theories unless they are in some way needed to provide notice of the harm being grieved. Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009). A grievance also need not contain every fact necessary to prove each element of an eventual legal claim. Id.

Moreover, the Ninth Circuit has recognized that a grievance suffices to exhaust a claim if it puts the prison on adequate notice of the problem for which the prisoner seeks redress. To provide adequate notice, the prisoner need only provide the level of detail required by the prison's regulations. Sapp v. Kimbrell, 623 F.3d 813, 824 (9th Cir. 2010) (citing Bock, 549 U.S. at 218). The primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation. Id; Griffin, 557 F.3d at 1120; see also Bock, 549 U.S. at 219 (citing Johnson v. Johnson, 385 F.3d 503, 522 (5th Cir. 2004) ("We are mindful that the primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued; the grievance process is not a summons and complaint that initiates adversarial litigation."). Thus, in this case, the grievance process used at

Corcoran State Prison where Plaintiff was incarcerated defines the boundaries of proper exhaustion.

A prisoner may be excused from complying with the PLRA's exhaustion requirement if he establishes that the existing administrative remedies were effectively unavailable to him. See Albino v. Baca (Albino II), 747 F.3d 1172-73 (9th Cir. 2014). When an inmate's administrative grievance is improperly rejected on procedural grounds, exhaustion may be excused as "effectively unavailable." Sapp, 623 F.3d at 823; see also Nunez v. Duncan, 591 F.3d 1217, 1224–26 (9th Cir. 2010) (warden's mistake rendered prisoner's administrative remedies "effectively unavailable"); Ward v. Chavez, 678 F.3d 1042, 1044-45 (9th Cir. 2012) (exhaustion excused where futile); Brown v. Valoff, 422 F.3d 926, 940 (9th Cir. 2005) (plaintiff not required to proceed to third level where appeal granted at second level and no further relief was available); Marella, 568 F.3d 1024 (excusing an inmate's failure to exhaust because he did not have access to the necessary grievance forms to timely file his grievance). In such a case, "the inmate cannot pursue the necessary sequence of appeals." Sapp, 623 F.3d at 823.

**B.**     **California Department of Corrections and Rehabilitation (CDCR) Administrative Grievance System**

The Court takes judicial notice of the fact that the State of California provides its prisoners and parolees the right to appeal administratively "any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." Cal. Code Regs. tit. 15, § 3084.1(a) (2018). The process is initiated by submitting a CDCR Form 602. Id. at § 3084.2(a) (2018).

On January 28, 2011, California prison regulations governing inmate grievances were revised. Cal.Code Regs. tit. 15, § 3084.7 (2018). Now inmates in California proceed through three levels of appeal to exhaust the appeal process: (1) formal written appeal on a CDC 602 inmate appeal form, (2) second level appeal to the institution head or designee, and (3) third level appeal to the Director of the California Department of Corrections and Rehabilitation ("CDCR"). Cal.Code Regs. tit. 15, § 3084.7 (2018). Under specific circumstances, the first level review may

be bypassed.  Id.  The third level of review constitutes the decision of the Secretary of the CDCR and exhausts a prisoner's administrative remedies.  See id. § 3084.7(d)(3) (2018).  Since 2008, medical appeals have been processed at the third level by the Office of Third Level Appeals for the California Correctional Health Care Services.  A California prisoner is required to submit an inmate appeal at the appropriate level and proceed to the highest level of review available to him.  Butler v. Adams, 397 F.3d 1181, 1183 (9th Cir. 2005); Bennett v. King, 293 F.3d 1096, 1098 (9th Cir. 2002).  Since the 2011 revision, in submitting a grievance, an inmate is required to "list all staff members involved and shall describe their involvement in the issue."  Cal.Code Regs. tit. 15, § 3084.2(a)(3) (2018).   Further, the inmate must "state all facts known and available to him/her regarding the issue being appealed at the time," and he or she must "describe the specific issue under appeal and the relief requested."  Cal.Code Regs. tit. 15, § 3084.2(a)(4) (2018).  An inmate now has thirty calendar days to submit his or her appeal from the occurrence of the event or decision being appealed, or "upon first having knowledge of the action or decision being appealed."  Cal.Code Regs. tit. 15, § 3084.8(b) (2018).

At the time of the events giving rise to the present action in 2018, California prisoners were required to submit appeals within thirty calendar days of the event being appealed.  Cal.Code Regs. tit. 15, § 3084.8(b)(1), or 30 days of first having knowledge of the action being appealed (3084.8(b)(2) .   The process was initiated by submission of the appeal to the first formal level.  Id. at § 3084.7(a) (2018).  Three levels of appeal were involved, including the first formal level, second formal level, and third formal level.  Id. at § 3084.7 (2018).  A final decision at the third level[2] of review satisfied the exhaustion requirement under 42 U.S.C. § 1997e(a).  Id. at § 3084.7(d)(3) (2018); see Lira v. Herrera, 427 F.3d 1164, 1166 (9th Cir. 2005).

In order to satisfy § 1997e(a), California state prisoners are required to use this process to exhaust their claims prior to filing suit.  Woodford, 548 U.S. at 85 (2006); McKinney, 311 F.3d. at 1199-1201.  A California prisoner is required to submit an inmate appeal at the

///

---

[2] The third level is sometimes known as the Director's level.

appropriate level and proceed to the highest level of review available to him. <u>Butler</u>, 397 F.3d at 1183; <u>Bennett</u>, 293 F.3d at 1098.

### C.    **Motion for Summary Judgment for Failure to Exhaust**

The failure to exhaust in compliance with section 1997e(a) is an affirmative defense under which defendants have the burden of raising and proving the absence of exhaustion.  <u>Bock</u>, 549 U.S. at 216; <u>Wyatt v. Terhune</u>, 315 F.3d 1108, 1119 (9th Cir. 2003).  On April 3, 2014, the Ninth Circuit issued a decision overruling <u>Wyatt</u> with respect to the proper procedural device for raising the affirmative defense of exhaustion under § 1997e(a).  <u>Albino II</u>, 747 F.3d at 1168–69. Following the decision in <u>Albino II</u>, defendants may raise exhaustion deficiencies as an affirmative defense under § 1997e(a) in either (1) a motion to dismiss pursuant to Rule 12(b)(6)[3] or (2) a motion for summary judgment under Rule 56.  <u>Id.</u>  If the court concludes that Plaintiff has failed to exhaust, the proper remedy is dismissal without prejudice of the portions of the complaint barred by § 1997e(e).  <u>Bock</u>, 549 U.S. at 223–24; <u>Lira</u>, 427 F.3d at 1175–76.

Summary judgment is appropriate when it is demonstrated that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); <u>Albino II</u>, 747 F.3d at 1169 ("If there is a genuine dispute about material facts, summary judgment will not be granted.")  A party asserting that a fact cannot be disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials, or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).  In judging the evidence at the summary judgment stage, the court "must draw all reasonable inferences in the light most favorable to the nonmoving party."  <u>Comite de Jornaleros de Redondo Beach v. City of Redondo Beach</u>, 657 F.3d 936, 942 (9th Cir. 2011).  The

///

---

[3] Motions to dismiss under Rule 12(b)(6) are only appropriate "[i]n the rare event a failure to exhaust is clear on the face of the complaint."  <u>Albino II</u>, 747 F.3d at 1162.

court must liberally construe Plaintiff's filings because he is a *pro se* prisoner.  Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010).

In a summary judgment motion for failure to exhaust administrative remedies, the defendants have the initial burden to prove "that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy."  Albino II, 747 F.3d at 1172.  If the defendants carry that burden, "the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him."  Id.  The ultimate burden of proof remains with defendants, however.  Id.  "If material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts."  Id. at 1166.

In arriving at these findings and recommendations, the court carefully reviewed and considered all arguments, points and authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if any, objections, and other papers filed by the parties. Omission of reference to an argument, document, paper, or objection is not to be construed that this court did not consider the argument, document, paper, or objection. This court thoroughly reviewed and considered the evidence it deemed admissible, material, and appropriate.

## IV.  PARTIES' UNDISPUTED FACTS RE ADMINISTRATIVE REMEDIES [4]

In accordance with Local Rule 260(a), on March 14, 2022, Defendant Lucas submitted the following Statement of Undisputed Facts with references to the supporting evidence.  (ECF No. 61-1.)  On April 20, 2022, Plaintiff submitted the following Responses to Defendants' Statement of Undisputed Material Facts.  (ECF No. 63.)  On May 23, 2022, Defendant filed a

---

[4]  These facts are taken from Defendant's Statement of Undisputed Facts in Support of Defendant's Motion for Summary Judgment.  (ECF No. 61-1.)  On April 20, 2022, Plaintiff submitted a response to Defendant's Statement of Undisputed Facts. (ECF No. 63.)  On May 23, 2022, Defendant Lucas submitted a reply to Plaintiff's response.  (ECF No. 66.)  The court has considered all declarations and exhibits submitted in support of each statement, including facts admissible in evidence contained in Plaintiff's verified complaint  which are based on Plaintiff's personal knowledge (Lopez v Smith, 203 F3d 1122, 1132 N14 (9th Cir 2000).

response to Plaintiff's Responses.  (ECF No. 66-1.)  Unless otherwise noted, the following facts

///

are undisputed by the parties or as determined by the court based on a thorough review of the

record.

| DEFENDANT'S UNDISPUTED FACT | PLAINTIFF'S RESPONSE | DEFENDANT'S REPLY |
|---|---|---|
| **ADMINISTRATIVE   REMEDIES** | | |
| 1. At all times relevant to this action, Plaintiff Hammler was a state prisoner in the custody of the California Department of Corrections and Rehabilitation (CDCR) and incarcerated at Kern Valley State Prison (KVSP). (First Amended Complaint (FAC), ECF No. 12 at 1.) | Denied, as he was during a time housed at CSPS. | Plaintiff's own FAC alleges that the misconducted "were directed against Plaintiff at Cal. State Prison Sac, and Kern Valley (KVSP)," and that Defendant Lucas resides in "Kern Valley (KVSP)." (FAC at 1 & 2). Nevertheless, it is immaterial in which prison facility Plaintiff was housed, since it is undisputed that Plaintiff was a state prisoner in the custody of CDCR, and therefore is bound by the exhaustion requirement of PLRA.[5] |

---

[5] The court agrees with Defendant that the dispositive issue here is whether Plaintiff was a state prisoner in the custody of CDCR at the time of the events at issue, and it is not material that he was housed at different CDCR prison facilities for part of the time.  Therefore, Fact #1 is not a disputed material fact precluding summary judgment.

| DEFENDANT'S UNDISPUTED FACT | PLAINTIFF'S RESPONSE | DEFENDANT'S REPLY |
|---|---|---|
| 2. CDCR provides an administrative appeals process which permits an inmate to grieve any departmental decision, action, condition or policy that adversely affects the inmate's welfare. KVSP has a formal administrative appeals system that allows an inmate to submit an appeal, and receive a First and Second Level of Review response. (Leyva Decl. ¶¶ 3-5.) | Admitted. | |
| 3. When an appeal was properly and timely submitted to the KVSP Appeals Coordinator's office for review, it would be assigned for processing. If an appeal was not properly or timely submitted, it was not assigned, but rejected and returned to the inmate with written instructions on how to cure the defects, if possible. If the inmate cured all noted defects and resubmitted the appeal within 30 days from the | Denied, as there is such a process, but it is regularly not followed by Appeals Staff in adhering to Code of Silence. | Plaintiff submitted no evidence to support his claim that the appeals process is regularly disregarded. Thus, the Court need not consider Plaintiff's conclusory allegation. Evangelista v. Kincheloe, 19 F.3d 1440 (9th Cir. 1994) ("Conclusory allegations unsupported by factual data are insufficient to defeat a summary judgment |

| DEFENDANT'S UNDISPUTED FACT | PLAINTIFF'S RESPONSE | DEFENDANT'S REPLY |
|---|---|---|
| date of the rejection, that appeal would be accepted.<br><br>(Leyva Decl. ¶¶ 7-8; see Howard Decl. ¶ 4.) | | motion.") [6] |
| 4. If an appeal is cancelled, the inmate may not resubmit the appeal.<br><br>(Leyva Decl. ¶ 9.) | Admitted. | |
| 5. A cancellation or rejection of an appeal at any level does not exhaust the administrative grievance process.<br><br>(Leyva Decl. ¶ 10; Cal. Code Regs. tit. 15 § 3084.1(b).) | Denied, as cancellation is only a Cancellation, and a Prisoner need only give CDCR a chance to address the issues at the Highest Level, and can do so via another 602 Challenging the Cancellation. | Although Plaintiff disputes this fact, it does not appear that he does not dispute that a cancellation or rejection of an appeal does not exhaust the administrative grievance process. To the extent that he disputes that cancellation or rejection does not exhaust the administrative grievance, Plaintiff submitted no evidence to support this claim. Lastly, the plain text of |

---

[6] Plaintiff has not supported his "facts" with citations to materials in the record, depositions, documents, electronically stored information, affidavits, declarations, stipulations, admissions, interrogatory answers, or other materials  Fed. R. Civ. P. 56(c). A summary judgment motion cannot be defeated by relying on conclusory allegations unsupported by factual data.  Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989.)  Therefore, Fact #3 is not a disputed material fact precluding summary judgment.

| DEFENDANT'S UNDISPUTED FACT | PLAINTIFF'S RESPONSE | DEFENDANT'S REPLY |
|---|---|---|
| | | Title 15 provides that a cancellation or rejection of an appeal does not exhaust administrative remedies.[7] |
| 6. While at KVSP, Plaintiff filed ten (10) grievances in 2018. Only one of them, grievance log number KVSP-0-18-02255, was against Defendant Lucas. (Leyva Decl. ¶¶ 14-15, Exh. 1.) | Admitted. | |
| 7. Grievance log number KVSP-0-18-02255 was received by KVSP grievance's office on July 27, 2018, and was classified as a "Legal" grievance. ((Leyva Decl. ¶¶14 &16, Exh. 1.) | Admitted. | |
| 8. In grievance log number KVSP-0-18-02255, Plaintiff appealed the rejection of appeal log number KVSP-0-18-1113 (hereafter "disciplinary grievance"). (Leyva Decl. ¶16, Exh. 2.) | Denied. See Opp. To Mot. For Sum. Judgem. | Arguments made in a pleading is not evidence. Brit. Airways Bd. v. Boeing Co., 585 F.2d 946, 952 (9th Cir. 1978). Further, "[t]he district court need not examine the entire file for evidence |

---

[7] Plaintiff fails to actually dispute Defendant's Fact #5 as written and fails to cite sufficient evidence in support of his "denial." Therefore, Fact #5 is not a disputed material fact precluding summary judgment.

| DEFENDANT'S UNDISPUTED FACT | PLAINTIFF'S RESPONSE | DEFENDANT'S REPLY |
|---|---|---|
| | | establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found." Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001). Lastly, nothing in Plaintiff's pleading controverts this fact.[8] |
| 9.  Pursuant to Department Operations Manual (DOM), section 54100.11, appeals of a rejected appeal cannot be accepted.  Plaintiff's appeal log KVSP-0-18-02255 was screened-out for this reason. (Leyva Decl. ¶ 16, Exh. 2.) | Denied.  See Opp. To Mot. For Sum. Judgem | Arguments made in a pleading is not evidence. Brit. Airways Bd., 585 F.2d 946. Further, the Court is not required to comb through the record to find disputes of fact. Carmen, 237 F.3d 1026. Lastly, nothing in Plaintiff's pleading contradicts this |

---

[8] Plaintiff points the Court to his Opposition to Motion for Summary Judgment, filed on April 20, 2022.  (ECF No. 67.)  The Opposition is 41 pages in length, containing several exhibits, and Plaintiff has not cited a page number where his evidence can be found.  The Court shall not attempt to guess what Plaintiff is referring to.  Fact #8 remains undisputed.

| DEFENDANT'S UNDISPUTED FACT | PLAINTIFF'S RESPONSE | DEFENDANT'S REPLY |
|---|---|---|
| | | fact.[9] |
| 10. A screened-out, or rejected, appeal, is different than a cancelled appeal in that an inmate may re-submit a screened out/rejected appeal. The re-submission may be accepted if the inmate corrects the noted deficiencies. (Leyva Decl. ¶ 17.) | Admitted. (Id.) | |
| 11. After grievance log KVSP-0-18-02255 was screened out the first time, Plaintiff resubmitted the grievance without any explanation or correction. The grievance was screened-out again, and Plaintiff was again advised that he could not appeal a rejected appeal, and that he must submit all supporting documents. The disciplinary grievance was | Denied. (Id.) | Arguments made in a pleading is not evidence. Brit. Airways Bd., 585 F.2d 946. Further, the Court is not required to comb through the record to find disputes of fact. Carmen, 237 F.3d 1026. Lastly, nothing in Plaintiff's pleading contradicts this fact.[10] |

_____

[9] Plaintiff points the Court to his Opposition to Motion for Summary Judgment, filed on April 20, 2022. (ECF No. 67.) The Opposition is 41 pages in length, containing several exhibits, and Plaintiff has not cited a page number where his evidence can be found. The Court shall not attempt to guess what Plaintiff is referring to. Fact #9 remains undisputed.

[10] Plaintiff points the Court to his Opposition to Motion for Summary Judgment, filed on April 20, 2022. (ECF No. 67.) The Opposition is 41 pages in length containing several exhibits, and Plaintiff has not cited a page number where his evidence can be found. The Court shall not attempt to guess what Plaintiff is referring to. Fact #11 remains undisputed.

| DEFENDANT'S UNDISPUTED FACT | PLAINTIFF'S RESPONSE | DEFENDANT'S REPLY |
|---|---|---|
| missing screen-outs from May 18 and June 29, 2018. (Leyva Decl. ¶ 18, Exh. 3.) | | |
| 12.    Although screened-out, grievance log KVSP-0-18-02255 still could have been accepted at a later date if Plaintiff explained that he was not appealing the fact that the disciplinary grievance (KVSP-0-18-1113) was rejected, but that he was appealing how Defendant screened the disciplinary grievance. Grievance   KVSP-0-18-02255 would have been classified as a "grievance against staff" if Plaintiff had clarified the issue. (Leyva Decl. ¶¶ 19-20.) | Denied. (Id.) | Arguments made in a pleading is not evidence. Brit. Airways Bd., 585 F.2d 946. Further, the Court is not required to comb through the record to find disputes of fact. Carmen, 237 F.3d 1026. Lastly, nothing in Plaintiff's pleading contradicts this fact.[11] |
| 13.  Plaintiff never re-submitted grievance   KVSP-0-18-02255 after it was screened out the second time. (Leyva Decl. ¶ 19; see Moseley | Admitted. (Id.) | |

[11] Plaintiff points the Court to his Opposition to Motion for Summary Judgment, filed on April 20, 2022.  (ECF No. 67.)  The Opposition is 41 pages in length containing several exhibits, and Plaintiff has not cited page number(s) where his evidence can be found.  The Court shall not attempt to guess what Plaintiff is referring to.  Fact #12 remains undisputed.

| DEFENDANT'S UNDISPUTED FACT | PLAINTIFF'S RESPONSE | DEFENDANT'S REPLY |
|---|---|---|
| Decl. ¶¶ 9-10.) | | |
| 14. During the pendency of KVSP-0-18-02255, Plaintiff's disciplinary grievance (KVSP-0-18-1113) was accepted, and reviewed through the third level. (Leyva Decl. ¶¶ 21-22, Exh. 4 & 5.) | Admitted. (Id.) | |
| 15. Aside from grievance log number KVSP-0- 18-02255, there were no other appeals filed by Plaintiff alleging that Defendant Lucas violated Plaintiff's right to free speech. (Leyva Decl. ¶ 23; Mosely Decl. ¶¶ 9-10.) | Admitted. (Id.). | |

## V.   DEFENDANT'S POSITION

Defendant Lucas moves for summary judgment under Federal Rule of Civil Procedure 56 on the ground that there is no genuine dispute that Plaintiff failed to exhaust applicable administrative remedies against Defendant for Plaintiff's claims against him prior to filing suit as required by the PLRA, 42 U.S.C. § 1997e(a), and thus Defendant is entitled to judgment as a matter of law.

Defendant's evidence consists of the First Amended Complaint (ECF No. 12); Undisputed Facts (ECF No. 61-1); Declaration of A. Leyva (Correctional Counselor II-Supervisor) (ECF No. 61-3), Declaration of Howard E. Mosely (Associate Director of the Office of the Appeals) (ECF No. 61-4) and its exhibits, which include copies of Plaintiff's appeals,

responses thereto, and other prison records; and the Court's record.

Defendant argues as follows:

Plaintiff's First Amended Complaint, filed on April 3, 2019, alleges that Defendant Lucas (Appeals Coordinator) violated Plaintiff's right to freedom of speech when Defendant Lucas rejected Plaintiff's prison appeal because Plaintiff had included offensive language in the appeal.[12] Defendant Lucas argues that Plaintiff failed to exhaust his administrative remedies for the freedom of speech claim before initiating this action. Defendant contends that Plaintiff submitted appeal log no. KVSP-0-18-02255 ("Appeal 2255"), which was rejected, and then ultimately to proceed to the Third Level of review to exhaust his remedies.

### A.   Defendant's Statement of Facts

#### 1.   Plaintiff's Allegations

Plaintiff alleges that in May 2018, he submitted a grievance, KVSP-0-18-1113 ("Appeal 1113"), which was reviewed and rejected by Defendant Lucas because it was duplicative. (First Amended Complaint, ECF No. 12 at 4 ¶ 4.) A screening form (CDC 695) was sent to Plaintiff, wherein Plaintiff responded on June 3, 2018, to the 695 screening form with, "[i]f you screen out again for Bullshit reason I will go to Fed. Judge and ask for order to make you process this 602." (Id. & Exh. at 24-25.) Plaintiff re-submitted the appeal with the hand-written response on the 695 screening form. (Id. at 4 ¶ 5.) On June 22, 2018, Plaintiff's appeal was rejected by Defendant Lucas again because it contained "threatening, obscene, demeaning or abusive language." (Id. at 22.) On July 24, 2018, Plaintiff crossed out the words "bullshit reason" and re-submitted the grievance. (Id. at 5 ¶ 6.)

#### 2.   Plaintiff's Administrative History

On July 27, 2018, the Appeals Office at KVSP received Plaintiff's Appeal KVSP-0-18-2255 (Appeal 2255). ((Declaration of A. Leyva, ECF No. 61-3, ¶¶14 & 16, & Exh. 1.) Appeal 2255 was screened out on August 7, 2018, by defendant Lucas and Plaintiff was advised that he cannot appeal a rejected appeal, but that he should take the corrective actions necessary and

---

[12] Plaintiff also brought a claim for retaliation under the First Amendment, but the retaliation claim was dismissed by the Court without leave to amend on July 27, 2021 (ECF No. 36).

resubmit the appeal. (Doc 61-3, pg11). After the grievance was screened out on August 7, 2018 by appeals coordinator Lucas (defendant) for the first time, Plaintiff re-submitted it without any explanation or correction. (Id. ¶18).  The Appeal was again screened out on August 27, 2018 by appeals coordinator Gonzales (not a defendant) because inmates cannot appeal a rejected appeal, and because Plaintiff did not include all the screen-outs from his disciplinary grievance. (Id.) Although screened-out, Appeal 2255 could still have been accepted at a later date if Plaintiff had included all the screen-outs from the disciplinary grievance and clearly explained that he was not appealing the fact that the disciplinary grievance was rejected, but how Defendant Lucas screened the grievance. (Id., ¶¶ 19-20.) If Plaintiff had clarified the issue, the grievance would have been classified as a "grievance against staff" rather than a "legal" grievance. (Id.) However, Plaintiff never clarified the issue, never re-submitted the grievance, and never appealed it to the third level of review. (Id. ¶¶ 19, 21, 22, Exhs. 4 & 5.); see Declaration of Howard E. Moseley, ECF No. 61-4 ¶¶ 9-10.)

**B.    Defendant's Arguments**

**1.    Administrative Remedies Were Available to Plaintiff**

Defendant argues that Plaintiff's record shows that the appeals process was available to Plaintiff.  In 2018 alone, Plaintiff was able to submit ten (10) grievances while he was housed at KVSP. (Declaration of A. Leyva, ECF No. 61-3 ¶¶ 14-15, Exh. 1.) In the same year, Plaintiff submitted twenty-one (21) grievances to the Office of Appeals, and received a third level decision for twelve (12) of those grievances. (See Declaration of Howard E. Moseley, ECF No. 16-4 ¶ 6, Exh. 1.) The number of grievances that Plaintiff was able to submit, and was able to exhaust, shows that administrative remedies were available to Plaintiff. More specifically, Plaintiff was able to submit and resubmit Appeal 02255. (Declaration of A. Leyva, ECF No. 61-3 ¶¶16 & 17), Exhs. 1, 2.)  Appeal 2255 was never cancelled, and if Plaintiff had included an explanation in his re-submission, the grievance would have been categorized as a "grievance against staff," and could have been accepted if Plaintiff followed all grievance procedures. (Id. ¶¶ 7, 8, 19-20; see Declaration of Howard E. Moseley, ECF No. 16-4 ¶4.)

**2.    Plaintiff Did Not Obtain a Decision at the Third and Final Level of**

### Review

Defendant Lucas argues that records maintained by the OOA demonstrate that Plaintiff never exhausted his remedies at the third level of review on his appeal of the incident underlying the present lawsuit. The OOA never received Appeal 2255, or any appeals alleging that Defendant violated Plaintiff's First Amendment right to free speech. (Moseley Decl. ¶ 9.) Appeal 2255 was received and reviewed by the institutional level, but was rejected because Plaintiff did not clarify that he was dissatisfied with the manner in which Defendant screened Plaintiff's grievance, rather than the fact that the grievance was screened-out. After the grievance was screened out the second time at the institution, Plaintiff did not re-submit the grievance although it could still be re-submitted, and accepted.

### 3.   Plaintiff Cannot Demonstrate That Administrative Remedies Were Effectively Unavailable

Defendant argues that Plaintiff cannot demonstrate that administrative remedies were effectively unavailable because (1) Plaintiff's grievance history reflects that he was able to submit multiple appeals to the third level (Moseley Decl. ¶ 8, Exh. 1); and (2) Plaintiff's record reflects that he was able to re-submit grievances after they were screened out; for example, Plaintiff was able to re-submit the disciplinary grievance, Appeal 1113, four times after it was screened-out on May 7, 2018, May 18, 2018, June 22, 2018, and June 29, 2018. (See Declaration of A. Leyva, ECF No. 61-4 ¶ 18, Exh. 3.) When Plaintiff followed all the proper procedures, the disciplinary grievance was accepted and reviewed through the third level. ( Id. ¶¶ 21-22, Exhs. 4 & 5.)

### C.   Defendant's Burden

The court finds that Defendant Lucas has carried his initial burden to prove that there was an available administrative remedy and that Plaintiff failed to exhaust that remedy for his freedom of speech claim at issue in this case.  Therefore, the burden shifts to Plaintiff to come forward with evidence showing that he did exhaust, or was excused from exhausting, the available remedies for his claim against Defendant Lucas.

## VI.   Plaintiff's Opposition

In opposition to Defendant's motion, Plaintiff argues that he was thwarted from exhausting his administrative remedies with Appeal 2255 by defense counsel's misbehavior and because Defendant Lucas on August 7, 2018 improperly rejected the Appeal by assuming that it was a "disciplinary" appeal, by wrongly claiming that Plaintiff had not submitted necessary documents, by failing to complete an "Effective Communication Form," and by leading Plaintiff to a "dead end" which prevented him from exhausting his remedies.

A.   **Defense Counsel Thai's Behavior**

Plaintiff argues that defense counsel Thai behaved improperly in dismissing two of Plaintiff's prior cases and in bringing a motion for terminating sanctions in this case.  (Pltf's Opposition, ECF No. 67 ¶¶1-4.)

Here, the Court finds that Plaintiff's arguments concerning Plaintiff's prior cases and the motion for terminating sanctions in this case are not relevant to the motion for summary judgment at hand, and shall not be addressed in this order.

B.   **Defendant Lucas Improperly Rejected Appeal 2255**

Plaintiff argues that Appeal 2255 was improperly rejected by Defendant Lucas on August 7th and that Defendant Lucas should have known, from KVSP's computer tracking system, that the appeal did not concern a "Disciplinary" issue.

Plaintiff also argues that Lucas should not have rejected the Appeal for missing documents because Plaintiff submitted all 9 of the Form 695's requested, consisting of 24 pages. (Declaration of Plaintiff, ECF No. 67 at 6 ¶8.)  Plaintiff declares that Correctional Officer Luna conveyed the documents to Plaintiff, and Luna accounted for each of the documents by signing a CDCR form 22 noting that he gave Plaintiff 24 pages including 9 Form 695's.  (Id. & Exh. B.) Plaintiff's Form 22 asked Luna:

"On the date of 9,4,18 you passed out mail and gave me 602 Log# KVSP-0-18-02255.  Twenty-four pages in all including Nine CDC Form 695: at p. 1 dated 8,27,28 – p. 2 dated 8,14,18 – p. 5 dated 6,22,18 – p. 6 dated 6,13,18 – p. 7-8 (2 pages) dated 5,7,18 – p. 9 dated 4,30,18 – p. 23 dated 8,7,18 – and p. 24 dated 7,27,18.  Is this a true statement?"

Correctional Officer Luna responded on the Form 22: "Inmate Hammler brought to my attention that the forms listed missing in his 602 are there."

(ECF No. 67 at 13 (Exh. B-1.))

Plaintiff further argues that Defendant Lucas (actually it was Gonzales) misled Plaintiff on August 27, 2018 on a 695 Form by advising Plaintiff that he was not allowed to appeal a rejected appeal.  Plaintiff offers evidence that in the 695 Form dated August 27, 2018, he was directed to follow the instructions of the 695 Form dated August 7, 2018, which stated that he is not allowed to appeal a rejected appeal.  Plaintiff argues that this advice led him to a "dead end" because he was confused and believed that he had no further remedies available. (ECF No. 67 at 6-7 ¶¶9, 10.)  The 695 Form stated:

> Be advised that **you cannot appeal a rejected appeal**, but should take the corrective action necessary and resubmit the appeal within the timeframes specified in CCR 3084.6(a) and CCR 3084.8(6).  Pursuant to CCR 3084.6(e), once an appeal has been cancelled, that appeal may not be resubmitted. However, a separate appeal can be filed on the cancellation decision.  The original appeal may only be resubmitted if the appeal on the cancellation is granted.

(ECF No. 67 at 15 (Exh. "C")) (emphasis added.)

## C.   Officers did not Complete an "Effective Communication Form" or Otherwise Explain to Plaintiff

Plaintiff alleges that he has a TAB score of 3.7, and officers were required to complete an Effective Communication Form when returning a 602 appeal to him, explaining the next step to take as directed in their attached 695 form.  Plaintiff declares that the officers did not complete this Form when they returned Appeal 2255 to him, and Defendant has not produced such document.

(ECF No. 67 at 8 ¶11.)

## VII.   DISCUSSION

### A.   Timeline of Events

**(1)**   On <u>May 7, 2018</u>, Plaintiff's Appeal KVSP-0-18-01113 (hereafter, Appeal 1113)

was rejected on CDCR Form 695 (Screening Form) by Defendant Lucas at the First Level of review pursuant to California Code of Regulations, Title 15, Section 3084.6(b)(8), because the appeal involved multiple issues.  (See Exhibit to Amended Complaint, ECF No. 12 at 24.)[13] Plaintiff was advised that "[t]he appeal allegations relative to 02/09/2018 have been previously addressed within #KVSP-O-18-00656."  (Id.)  Appeal 1113 was categorized by the prison as "**Disciplinary**" because Plaintiff had requested reversal of a Rules Violation Report not relevant to this case. (Id. at 24.)

   **(2)**   On June 3, 2018, Plaintiff resubmitted Appeal 1113 with the May 7th screening form.  At the bottom of page 2 of the screening form, Plaintiff wrote, "If you screen out again for Bullsh** reason, I will go to Fed. Judge and ask for order to make you Process this 602.  Stop Lucas!"  (Id. at 24-25.)

   **(3)**   On June 22, 2018, Appeal 1113 was rejected again by Defendant Lucas at the First Level of review on CDCR Form 695, pursuant to Title 15 CCR 3084.6(b)(4), because it contained offensive language ("Bullshit").  (Exhibit to Declaration of A. Leyva, ECF No. 61-3 at 15.)

   **(4)**   On July 24, 2018, Plaintiff resubmitted Appeal 1113 with the offending language crossed out.[14]  (Id.)

   **(5)**   On July 25, 2018, Plaintiff filed a **_new_** Appeal KVSP-0-18-02255 (hereafter, 2255), in which he appealed the manner in which Defendant Lucas had rejected Appeal 1113, claiming that his rights to freedom of speech had been violated.

   **Grievance/Appeal 2255 filed on July 25, 2018**

   Subject of appeal: violation of U.S. Const. Amends. 1 and 14. Retaliation, Free Speech, Equal Pro.

   On the date of June 22, 2018 A. Lucas rejected 602 Log #KVSP-0-18-1113, (Appellant (Apt.) became aware of 6,29,18) Demanding that Apt. Remove

---

   [13] Page numbers referred to in this order reflect the numbers assigned by the Court's electronic court filing (ECF) system and not the numbering used by the parties on their documents.

   [14] Appeal 1113 was subsequently exhausted to the Third Level of review on or about December 14, 2018, (Leyva Decl., ECF No. 61-3 at 6 ¶22 & Exh. 5 at 114-115), but not before Plaintiff filed Appeal 2255.

language from it before it would be allowed to be Filed, i.e., before Apt. would be allowed to use the 602 Process. Herein, Apt. is alleging that the Language in issue was Protected Speech having been his opinion and Pronounced Wish to Pursue Redress via Constitutional Avenues. And Lucas Retaliated/Reproached Apt For so doing. This, even though the Language was not the Kind of "Fighting Words." Other Prisoners are allowed to use Free Diction and Lucas Precluded Apt. From having the Equal Protection of Law, Resolve.

(Exhibit to Declaration of A. Leyva, ECF No. 61-3 at 13-14.)

**(6)** On <u>August 7, 2018</u> at the First Level of review, on CDC Form 695, Plaintiff's Appeal 2255 was rejected by Defendant Lucas and returned to Plaintiff with this notification:

**<u>CDCR Form 695, August 7, 2018</u>**

Be advised that these documents are being returned to you as they are not an appeal.

(Not an Appeal) Be advised that you cannot appeal a rejected appeal, but should

take the corrective action necessary and resubmit the appeal within the timeframes

specified in CCR 3084.6(a) and CCR 3084.8(b).

(ECF No. 61-3 at 11, 56 (same)).

After Appeal 2255 was rejected on August 7, 2018, Plaintiff resubmitted it without any explanation or correction. (Leyva Decl., ECF No. 61-3 at 5 ¶ 18 and Exh. 3 at 11, 56 (same)). Appeal 2255 was categorized as, "LEGAL, Processing of Appeals." (<u>Id.</u>)

**(7)** On <u>August 27, 2018</u>, Appeal 2255 was rejected again at the First Level of review, on CDCR form 695, this time by Appeals Coordinator **C. Gonzales** [not a defendant]. (<u>Id.</u> at 34.) Plaintiff was informed that the appeal was rejected for missing necessary documentation. (<u>Id.</u>)

**B.**   **<u>Analysis</u>**

Defendant Lucas argues that Plaintiff failed to exhaust his administrative remedies for the freedom of speech claim before initiating this action.

The parties do not dispute that CDCR had an appeals process at KVSP which was available to Plaintiff. (Leyva Decl. ¶¶ 3-5; ECF No. 63 at 1(Pltf admitted UF #2)).

There is also no dispute that Plaintiff is experienced in filing prisoner civil rights cases and successfully submitting prison grievances/appeals. While at KVSP in 2018, Plaintiff filed ten (10) grievances. (Leyva Decl. ¶¶ 14-15, Exh. 1; ECF No. 63 at 2 (Pltf admitted UF #6.)).

Defendant submits evidence that in the same year Plaintiff submitted twenty-one (21) grievances to the Office of Appeals and received a third level decision for twelve (12) of those grievances. (See Declaration of Howard E. Moseley, ECF No. 16-4 ¶ 6, Exh. 1.)  A search by the court of the record shows that Plaintiff filed 54 civil rights cases in California beginning in 2014, with 40 of those cases filed in the Eastern District of California.  (PACER Search.)

Here, there is no dispute that Plaintiff failed to complete the appeals process to the final Third Level of review for Plaintiff's claim against Defendant Lucas before filing suit. (Leyva Decl. ¶ 19; see Moseley Decl. ¶¶ 9-10; ECF No. 63 at 2 (Plaintiff admitted UF # 13)).  However, Plaintiff argues that he exhausted the remedies available to him but was thwarted from exhausting all of his remedies because of confusion that arose during Defendant Lucas's screening of Appeal 2255.

Again, the parties do not dispute that CDCR had an appeals process at KVSP which was available to Plaintiff.  However, Plaintiff argues that Defendant Lucas improperly rejected his Appeal 2255.  Plaintiff argues that Defendant Lucas improperly rejected this Appeal *because* Lucas wrongly determined it was a "**Disciplinary**" appeal based on underlying Appeal 1113. However, Appeal 2255 was entitled "LEGAL, Processing of Appeals" and was rejected on August 27, 2018, for missing documents (ECF No. 61-3 at 34).

Plaintiff also argues that his appeal should not have rejected for missing documents because Plaintiff submitted all 9 of the Form 695's requested which consisted of 24 pages. (Declaration of Plaintiff, ECF No. 67 at 6 ¶8.)  Plaintiff argues that the Form 22 he submitted proves that Correctional Officer Luna confirmed that Plaintiff submitted all of the documents requested.  In the Form 22, Correctional Officer Luna responded that "Inmate Hammler brought to my attention that the forms listed missing in his 602 are there."  This statement by Officer Luna is not sufficient to prove that Officer Luna personally looked through the documents, identified them, and confirmed that each of the 9 forms and 24 pages were there.  **Importantly**, if Plaintiff did have all of the documents he only needed to resubmit the Appeal with the documents as requested.

Plaintiff's argument that Defendant Lucas misled him on August 7, 2018, by advising

him he could not appeal a rejected appeal is not supported by the evidence.  Plaintiff has submitted copies of 695 Forms dated August 7, 2018 and August 27, 2018, both which advised Plaintiff that "**you cannot appeal a rejected appeal**," and also advised that he "**should take the corrective action necessary and resubmit the [rejected] appeal**."  (emphasis added.)  (ECF No. 67 at 15 (Exh. C-1) & 37 (Exh. C-23)).  Thus, even if Plaintiff was confused, he was clearly advised that he could resubmit the rejected appeal, yet he failed to follow the instructions, failed to resubmit Appeal 2255 after August 27, 2018, and therefore failed to exhaust remedies which were still available to him.  As **15 CCR 3084.1(b)** clearly states, a cancellation or rejection decision does not exhaust administrative remedies.

Plaintiff also argues that officers failed to complete an **Effective Communication Form** when returning a 602 appeal to him, which would explain the next step to take as directed in their attached 695.  However, Defendant argues that Plaintiff points to no authority that an Appeals Coordinator is required to complete an Effective Communication Form for Plaintiff when rejecting his Appeal, and of the four references to the TABE score in the 2018 version of Title 15, none mandate that an Appeals Coordinator must complete an Effective Communication Form.  Defendant cites to Title 15 § 3084.5(b)(1), which states that an appeals coordinator "shall ensure that the inmate. . . receives assistance in completing and/or clarifying the appeal" if "an appeal indicates the inmate . . . has difficulty describing the problem in writing or has a primary language other than English," and argues that there is no evidence that Plaintiff required assistance in completing or clarifying the appeal.  **In fact, as mentioned above, Plaintiff has filed numerous cases and is well familiar with prosecuting cases and the rules that apply exhaustion.**

The Court notes that Title 15 prison grievance procedures provide: "When rejecting an appeal, the appeals coordinator shall complete an Appeals Screening Form, CDC Form 695 (rev 5-83), explaining why the appeal is unacceptable. If rejection is based on improper documentation the form shall provide clear instructions regarding further action the inmate must take to qualify the appeal for processing." 15 Cal. Code Reg. at § 3084.6(a)(1).  This section refers to a CDC Form 695, not to an Effective Communication Form, and Plaintiff does not

appear to argue that the Appeals Coordinator failed to provide him with a CDC Form 695 when his appeal was rejected. Evidence shows that Plaintiff was provided with a CDCR Form 695 each time his appeal was rejected, clearly explaining that "**you cannot appeal a rejected appeal**," and that he "**should take the corrective action necessary and resubmit the [rejected] appeal**." (emphasis added.) (ECF No. 67 at 15 (Exh. C-1) & 37 (Exh. C-23)). Even if Plaintiff was not provided with additional instructions, Plaintiff failed to exhaust his administrative remedies when he failed to resubmit his rejected Appeal 2255 following the August 27 rejection.

On April 25, 2018, before Plaintiff filed this case, he submitted an appeal which was later given CDCR case # KVSP-0-18-01113, requesting that a Rules Violation Report (RVR) issued against him be reversed (Doc 12, pgs 27-28). The prison categorized Appeal as "**Disciplinary**" because Plaintiff wanted relief from discipline. (ECF No. 12 at 24-25.) On May 7, 2018, Plaintiff asserts that Appeal 1113 was rejected on a 695 screening form by Defendant Lucas because it was duplicative of another appeal Plaintiff had previously submitted. (ECF No. 12 at 4 ¶ 4.) Plaintiff disagreed with the rejection and on June 3, 2018 (Doc 12, Paragraph 5) , he resubmitted Appeal 1113 together with the Form 695 screening form. (Id.) Plaintiff responded in writing on the Form 695, using the word "bullshit" in his response. (Doc No. 12, pgs 24-25) On June 22, 2018, Appeal 1113 was rejected for the second time by Defendant Lucas because of Plaintiff's alleged offensive language which is the subject of this case (Doc No. 12, p22).

According to Plaintiff, comes the confusion that he maintains thwarted his efforts to exhaust his remedies. On July 24, 2018, Plaintiff crossed out the offending words (bullshit reason) and then on July 25, 2018, filed the relevant appeal which we are concerned with here, KVSP-O-18-02255 ("Appeal 2255"), against Defendant Lucas for rejecting Appeal 1113 on June 22, 2018, for Plaintiff's use of allegedly offensive language claiming that Lucas retaliated against Plaintiff and violated Plaintiff's rights to freedom of speech and equal protection. (Exhibit to Declaration of A. Leyva, ECF No. 61-3 at 13-14.) At the top of Appeal 2255, filed July, 25,2018, Plaintiff clearly wrote, "violation of U.S. Const. Amends. 1 and 14. Retaliation, Free Speech, Equal Pro." (Doc.No. 12, p20). The prison categorized Appeal 2255 as a **"Legal"** grievance. (Doc No 63-1, p11). On August 7, 2018 at the First Level of review, on CDC Form 695,

Defendant Lucas rejected Appeal 2255 advising Plaintiff that "these documents are being returned to you as they are not an appeal" ,  adding, " Be advised that **you cannot appeal a rejected appeal**, but should take the corrective action necessary and resubmit the appeal within the timeframes specified in CCR 3084.6(a) and CCR 3084.8(b)".  (<u>Doc 61-3, p11</u>) (emphasis added)).  Plaintiff resubmitted Appeal 2255 without any explanation or correction, and on August 27, 2018 Appeals Coordinator Gonzales rejected the appeal for missing documents.  (Leyva Decl., ECF No. 61-3 at 5 ¶ 18 and Exh. 3 at 11, 56 (same)).  Plaintiff declares that he believed the message on the 695 form "you cannot appeal a rejected appeal" was a "**dead end**" meant to mislead him and thwart his attempts to exhaust his remedies rendering his remedies unavailable. (Declaration of Plaintiff, ECF No. 67 at 7 ¶9.)  Plaintiff also argues that Defendant Lucas and Appeals Coordinator Gonzales prevented him from pursuing the "sequence of appeals," causing remedies to be plainly unavailable.  (<u>Id.</u> at 7 ¶10.)  He also claims that Defendant Lucas did not sufficiently explain the next step to take after his appeal was rejected.  (<u>Id.</u> at 8 ¶11.)  Plaintiff never re-submitted Appeal 2255 after it was screened out the second time on August 27, 2018. (Leyva Decl. ¶ 19; see Moseley Decl. ¶¶ 9-10; ECF No. 63 at 2 (Plaintiff admitted UF #13)).

      **C.**    <u>**Case Law**</u>

      Unlike the case In <u>Nunez v. Duncan</u>, 591 F.3d 1217 (9th Cir. 2010), where a warden's erroneous mistake led Plaintiff Nunez on an almost ten month "**wild goose chase**", nothing of the sort occurred here.  After Plaintiff's 2255 appeal was rejected by Gonzales (not Lucas) on August 27 for only the second time, Plaintiff was advised in the rejection that he needed to resubmit the appeal because the appeal was missing necessary supporting documents. But instead, as Defendant points out in his Reply, Plaintiff chose not to pursue the grievance even though Plaintiff is familiar with the grievance process as he was able to exhaust more than 40 appeals before 2018 (Doc No 66, p.4).  Of importance here is the extremely **short timeline**.  The relevant 602 appeal here in which Plaintiff raises for the first time the claim that Lucas violated his First Amendment right, was submitted on July 25, 2018. It was soon rejected on August 7 by defendant Lucas for reasons previously stated.  Plaintiff then resubmitted the grievance without **explanation or correction** and it was again screened out on the last occasion on August 27,

2018. (Doc No. 61-3, p5) by appeals coordinator Gonzales.   The time between the initial filing of this grievance and the August 27 rejection was little more than a month.  It therefore appears that Plaintiff simply abandoned his grievance (see, Blacher v Buffaloe, 2020 WL 4037204; 2020 US Dist Lexis 127908), erroneously believing that he was "thwarted by improper screening". While it is true that under some circumstances improper screening of an inmate's administrative grievances renders administrative remedies effectively unavailable (Sapp v Kimbrell 623 F3d 813 (9th Cir 2010), here by contrast, and assuming for the moment that both Lucas and Gonzales were mistaken in believing that Plaintiff's appeal related to a **disciplinary** matter and rather than to a First Amendment claim, they still did not send Plaintiff on a wild goose chase or to a dead end.  In contrast to the finding in Nunez (supra), where the court found that Nunez was excused from the exhaustion requirement because he (Nunez) took reasonable and appropriate steps to exhaust his claim, here Plaintiff Hammler did not.

      First, if inmate Hammler honestly felt that he had supplied the necessary documents being requested of him, he still had post August 27 administrative remedies available to him by either following the instructions given to him in the August 27th rejection, ("Attach # KVSP-0-18-02255 in its entirety to include CDCR Form 695's and all supporting documents.  Follow instructions from CDC 695 dated 8/7/18") (Doc. No 61-3, pg34).  Or conversely, seeking clarification of which documents were claimed to be missing.  As to this, A. Leyva, in his declaration states, "Based on my review, it appears the grievance KVSP-0-18-02255 was missing the screen outs from May 18, 2018 and June 29, 2018…" (Doc No.61-3, pg 5).  A. Leyva continues, "Although screened out, Log no. KVSP-0-18-02255 could still have been accepted at a later date if Plaintiff corrected the noted deficiency by using the bottom part of the screen-out form…to explain why his appeal should have been accepted" (Id, pg5).   This was Plaintiff's opportunity to explain his position of which he knew well.  Moreover, if officials at KVSP were mistaken that Plaintiff's appeal concerned the disciplinary matter (1113) rather than the First Amendment matter (2255), with Plaintiff's extensive experience in filing civil rights cases as outlined above, he certainly could have easily alerted CDCR officials of their mistake by using

the bottom of the screen-out form as stated by A. Leyva to bring this misunderstanding to their attention. Plaintiff simply did not.

It is significant that with Plaintiff extensive familiarity with the CDCR administrative process he knew well how to exhaust administrative remedies. To fall within the exception of the **Sapp** case, a prisoner must show that he attempted to exhaust his administrative remedies but was thwarted by improper screening. The Sapp decision requires that Plaintiff demonstrate that prison officials screened his grievance for reasons inconsistent with or unsupported by applicable regulations (see, Blacher, supra). Plaintiff has not shown that his 2255 grievance was screened out for reasons inconsistent with or unsupported by applicable regulations. In **Haynes v Biaggini** (2017 US Dist Lexis 179594), citing Sapp, the court stated, *"In Sapp, the Ninth Circuit also analyzed whether the inmate-plaintiff's failure to exhaust would be excused by a good faith belief that administrative remedies were effectively unavailable based on repeated rejections and screen-outs. 623 F.3d at 826-27. The court concluded that the inmate-plaintiff could not have a 'reasonable belief that administrative remedies were effectively unavailable' because he was specifically instructed on how to rectify the deficiencies in the screened out appeals".* The Haynes court continued, *"The court [Sapp] also looked to whether the plaintiff was able to correctly follow the administrative grievance procedures…(suggesting a possibility that exhaustion might be excused where prisons create complicated procedural requirements for 'the purpose of tripping up all but the most skilled prisoners')".* Here, as in Sapp and Haynes, Plaintiff has demonstrated by not only his multiple filings in this case, but by his extensive litigation history that he certainly knows how to successfully navigate the administrative appeals process. It is clear that Plaintiff did not make full use of the prison grievance process before filing suit, and even though Plaintiff's appeal was screened out twice, administrative remedies were still available to him because he was specifically instructed how to address his complaints, but failed to follow those instructions.

In the instant there is no evidence that officials led Plaintiff to a "dead end" in the exhaustion process.  After Plaintiff's Appeal 2255 was rejected the second time on August 27, 2018 by Gonzales (not Lucas), Plaintiff was advised on Form 695 that he needed to resubmit the appeal with documents that were missing.  Plaintiff argues that these instructions were confusing because he had already submitted Appeal 2255 with all of the documents requested.  Importantly, and fatal to Plaintiff's argument that he was prevented from exhausting his administrative remedies, is that he did not resubmit his 2255 appeal after the August 27 rejection when he still had available administrative remedies.  Plaintiff was clearly instructed that his next step in the exhaustion process was to resubmit the appeal with all of the requested documents.  Plaintiff's failure to follow this instruction was not excused simply because Plaintiff was either confused, or felt that he had already submitted all the required documents.  It was Plaintiff's responsibility to complete the exhaustion process to the Third Level of review, and he failed to do so.

Interestingly, Plaintiff filed Appeal 2255 on July 25, 2018, under Cal.Code Regs. tit. 15, §3084.8(b)(1), Plaintiff was required to submit Appeal 2255 within 30 calendar days of either the occurrence of the event being appealed (e.g., the rejection of Appeal 1113), or upon Plaintiff's first knowledge of the decision or action being appealed (3084.8(b)(2)).  If Plaintiff was notified on June 22, 2018 (the date of the rejection) about the rejection of Appeal 1113, he had 30 calendar days, or until July 22, 2018, to submit his appeal challenging the rejection.  That being said, there is nothing in the record before the Court to demonstrate <u>when</u> Plaintiff knew that Appeal 1113 had been rejected, but it arguably suggests that had Plaintiff received notice of the rejection on June 22, and Lucas knew this to be so, defendant Lucas could have cancelled it for violating the 30 day rule set forth above.  If true, then the failure to do so may well be attributed to a misunderstanding by the CDCR appeals coordinators that Plaintiff's July 25th appeal concerned the 1113 disciplinary matter rather than the 2255 First Amendment issue—a misunderstanding that likely would have continued throughout the screening process which ended on August 27th.

**V111   CONCLUSION**

In conclusion, the law in this area is clear -- the obligation to exhaust available remedies

persists as long as some remedy remains available.  Brown, 422 F.3d at 935.  Here, even if arguably Plaintiff's July 25th appeal was improperly screened out, all Plaintiff needed to do was follow the instructions provided to him each time his Appeal was rejected. The two rejections Plaintiff received were within 20 days of each other.  In this short period of time it cannot be said that Plaintiff was led on a "wild goose chase" as in the Nunez case cited above. Here, the two rejections of Plaintiff's grievance did not give rise to a reasonably good faith belief that administrative remedies were effectively unavailable.  As long as some relief was still available to Plaintiff through the administrative process, he was required to continue his exhaustion efforts even if the exhaustion process would ultimately prove futile (see, Haynes, supra; Brown v. Valoff, 422 F3d 926, 944-45 (9th Cir. 2005)).    Again, even if arguably KVSP appeals coordinators Lucas and Gonzales were confused as to the purpose of Plaintiff's July 25th grievance, Plaintiff has not demonstrated that this confusion, occurring over such a  short period of time, led Plaintiff to a "dead end", or set Plaintiff off on a "wild goose chase".  Plaintiff is an experienced litigator who could have easily cleared up any confusion had he sought to do so, but for whatever reason decided not to.  Instead, Plaintiff abruptly, prematurely and unwisely ended his efforts to exhaust while available administrative remedies still existed.

Therefore, based on the foregoing, the Court finds that Plaintiff did not exhaust his available administrative remedies for the claims at issue in this case, and that administrative remedies were not effectively unavailable to him (Sapp).  The Court shall recommend that Defendant's motion for summary judgment based on Plaintiff's failure to exhaust his administrative remedies be granted.

## 1X.    RECOMMENDATIONS

The Court finds, based on the record before it, that Plaintiff failed to exhaust his available administrative remedies for his claims in this case against Defendant, as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a).  Plaintiff also failed to submit any competent evidence sufficient to create a genuine dispute for trial that Plaintiff exhausted his remedies. Therefore, Defendant's motion for summary judgment, filed on March 14, 2022, should be granted and this case dismissed without prejudice.

Accordingly, based on the foregoing, **IT IS HEREBY RECOMMENDED** that:

1.      Defendant Lucas's Motion for Summary Judgment, filed on March 14, 2022, be GRANTED;

2.      This case be DISMISSED, without prejudice, based on Plaintiff's failure to exhaust his available administrative remedies before filing suit; and

3.      The Clerk be directed to CLOSE this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within **fourteen (14) days** after the date of service of these findings and recommendations, any party may file written objections with the court.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed **within ten (10) days** after the date the objections are filed.  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   __February 14, 2023__                    _____/s/ Gary S. Austin_____
                                                UNITED STATES MAGISTRATE JUDGE